# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Byron Perez, *et al.*,

      Plaintiffs,

      v.

A+ Building Maintenance and Home Repair, LLC, *et al.*

      Defendants.

Case No. 3:17CV01261

Order

This is an employment action for unpaid wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*.

Byron Perez[1] and Nicholas Foley accuse their former employer A+ Building Maintenance and Home Repair, LLC (A+) of misclassifying them as exempt employees and withholding overtime wages in violation of state and federal fair wage laws. (Doc. 17, ID 228, 230). Further, they allege "[u]pon information and belief" that defendants "applied the same pay practices and policies" to their coworkers. (*Id.* at 224).

Pending is plaintiffs' motion for conditional class certification pursuant to 29 U.S.C. § 216(b) (Doc. 18), which defendants oppose. (Doc. 20). For the reasons that follow, I grant the motion, though I modify the plaintiffs' proposed class.

## Background

A+, of which codefendant Nick Carpenter is the sole proprietor and member, offers handyman services to property owners. (Doc. 20-1, ID 356).

---

[1] I have substituted Perez as the titular plaintiff in this case because the original lead plaintiff, Scott Parton, "suddenly passed away." (Doc. 18, ID 244 n.2).

1

Perez worked for A+ on and off between 2014 and 2016, and Foley worked for A+ between 2013 and 2017. (Doc. 17, ID 217-18). As a "general labor/service technician[s]," they responded to calls from customers looking to have work done on their homes or businesses, "including but not limited to installing appliances, plumbing, remodeling, electrical maintenance, landscap[ing], snow removal, and other miscellaneous general labor." (*Id.* at 214-15).

Although Perez and Foley "primarily performed non-exempt job duties" (Doc. 17, ID 215), they contend A+ improperly classified them as exempt employees, paid them on a salaried basis, and reduced their weekly salaries based on the number of hours they worked, in violation of FLSA regulations. *See* 29 C.F.R. § 541.602(a) ("Subject to the exceptions provided in paragraph (b) . . . an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked."). Defendants also failed to pay plaintiffs overtime for hours worked over forty in a given work week, and regulalry interrupted their meal periods with "requests to perform job duties." (*Id.* at 219).

Seeking to recover their unpaid wages, Perez and Foley filed the instant suit and now move to conditionally certify their FLSA claims "as a collective action so that potential . . . plaintiffs can be notified of the suit's existence and of their right to participate." *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010).

Defendants oppose the motion. While they concede that the required showing is minimal, A+ and Carpenter insist plaintiffs have not demonstrated a colorable basis for their claim that defendants have subjected others to a common pattern of FLSA violations.

**Standard of Review**

"Enacted in 1938, the FLSA established a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek." *In re Amazon.com, Inc. Fulfillment Center FLSA Wage and Hour Lit.*, 852 F.3d 601, 608 (6th Cir. 2017) (citation omitted). An employee can vindicate his right to overtime pay under the Act by asserting a claim against his employer on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Such a collective action differs from a traditional Rule 23 class action in two significant ways.

"First, whereas Rule 23 creates a regime where class members are either bound by the litigation or must *opt out* of a suit to avoid becoming parties bound by any judgment, the FLSA requires employees to *opt in* to the action." *Taylor v. Pilot Corp.*, 697 F. App'x 854, 857 (6th Cir. 2017). "Second, whereas Rule 23 outlines a relatively detailed class-certification process, the FLSA says little about how collective actions should work." *Id.* The Act, for instance, "does not define 'similarly situated' and neither has the Sixth Circuit." *Myers v. Marietta Mem. Hosp.*, 201 F. Supp.3d 884, 890 (S.D. Ohio 2016).

"But notably," the district courts have developed a solution, employing a two-phase inquiry to determine whether to certify a collective action. *Id.*

Phase one, known as conditional certification, "takes place at the beginning of discovery." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). A plaintiff who gains conditional certification is "permitted to solicit opt-in notices, under court supervision, from current and former employees." *Myers*, 201 F. Supp.3d at 890 (citation omitted). Phase two, known as final certification, "occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (internal quotation marks omitted).

At the conditional certification phase, I determine, as a preliminary matter, whether the named plaintiffs "have shown that the employees to be notified are, in fact, 'similarly situated.'"

*Id.* The Sixth Circuit has detailed "three non-exhaustive factors . . . relevant" to this inquiry: "(1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness and procedural impact of certifying the action." *Monroe v FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (brackets omitted) *abrogated on other grounds by Campbell-Ewald v. Gomez*, --- U.S. ---, 136 S. Ct. 663 (2016)).

Under these factors, "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy proves a violation as to all the plaintiffs." *O'Brien, supra*, 575 F.3d at 585. But "showing a 'unified policy' of violations" is not a hard and fast requirement. *Monroe*, 860 F.3d at 398 (citation and brackets omitted).

Employees may also be similarly situated if "their claims are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* (citation and brackets omitted). This standard is "less stringent" than the Rule 20(a) joinder requirement that all claims "arise out of the same action or occurrence," and Rule 23(b)(3)'s requirement that common questions predominate the action. *O'Brien, supra*, 575 F.3d at 584 (citation omitted).

In terms of proofs, I consider "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread plan was submitted." *Myers*, 201 F. Supp.3d at 890 (citation and ellipsis omitted). Reviewing this evidence, I am mindful that Perez and Foley need only make a "modest factual showing" of substantial similarity. *Comer, supra*, 454 F.3d at 547. Moreover, I do not test plaintiffs' evidence

by "consider[ing] the merits of the claims, resolv[ing] factual disputes, or evaluat[ing] credibility." *Myers, supra*, 201 F. Supp.3d at 890.

I ask, rather, only whether plaintiffs demonstrate "at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists." *Olivo v. GMAC Mortgage Corp.*, 374 F. Supp.2d 545, 548 (E.D. Mich. 2004). This "fairly lenient standard . . . typically results in 'conditional certification' of a representative class." *Comer*, 454 F.3d at 547 (citation omitted).

Once the case reaches the final certification stage, I "reexamine[] whether the employees actually meet the similarly-situated requirement" with the benefit of more discovery, *Taylor*, 697 F. App'x at 857–58, under a "stricter standard," *Myers, supra*, 201 F. Supp.3d at 890. If I then find similarity lacking, I "can always remove employees from the 'class' [I] 'certified' at stage one." *Taylor, supra*, 697 F. App'x at 858.

**Discussion**

Perez and Foley move to certify a class of "[a]ll current and former service technicians, general laborers, or other employees of Defendants who performed general labor and worked over 40 hours in any workweek, beginning three years immediately preceding the filing of th[e] Complaint" in the present action.[2] (Doc. 18, ID 237).

To prove these employees are "unified" by a "common . . . statutory violation[]," *O'Brien, supra*, 575 F.3d at 584, plaintiffs offer the following: (1) personal declarations from Perez and Foley and former A+ employee Jason Havens; (2) a copy of the A+ Building

---

[2] To be clear, plaintiffs' preferred proposed class includes employees defendants underpaid "in any workweek, beginning three years immediately preceding the filing of this Complaint *through the date of final disposition of this case*." (Doc. 18, ID 237 (emphasis added)). Because "the date of final disposition of this case" cannot be known at present, I am modifying the proposed class to eliminate this language.

5

Maintenance and Home Repair employee handbook; and (3) a series of Havens' paystubs, showing that defendants also paid him a weekly salary that occasionally varied.[3]

### A. Employee Handbook and Paystubs

The A+ employee handbook declares that only employees "whose positions meet the specific criteria established by the Fair Labor Standards Act are exempt from overtime pay requirements"–a statement plaintiffs concede "appears facially compliant" with the Act. (Doc. 21, ID 360). "However," they explain it is defendants' unwritten policy of "classifying general laborers/service technicians as exempt and paying them a salary, in the form of a weekly wage, rather than on an hourly basis, and no overtime premium" that violates the FLSA. (*Id.*).

If so, then Perez and Foley can best demonstrate that policy through detailed affidavits from the employees whom defendants, in practice, have underpaid–not by giving me a copy of the "facially compliant" employee handbook the defendants allegedly do not follow.

Havens' paystubs also "appear[] facially compliant" with the FLSA's salary-basis rules.[4] "An employee will be considered to be paid on a 'salary basis'" under the Act if he "regularly receives each pay period . . . a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). During the time relevant here, the minimum predetermined amount an employer was required to pay its employees was $455 a

---

[3] Only the declarations are helpful in applying *O'Brien*; the other two items tend to undercut, rather than support plaintiffs' position.

[4] This analysis assumes defendants correctly classified Havens as a salaried employee, an assumption I acknowledge Perez and Foley dispute. But plaintiffs' claims against defendants are not limited to misclassification; they assert first, that "[d]efendants uniformly classif[ied] employees as 'Exempt/Salaried,'" and second, that defendants "reduced their weekly wages based on the number of hours they worked per week, including when they missed work or worked less than forty . . . hours in a workweek"–with the implication being that these reductions *also* violate the FLSA's regulations concerning exempt employees. (Doc. 18, ID 245-46). As explained above, Havens' paystubs appear to contradict the second half of plaintiffs' theory.

6

week, and Havens' paystubs show that A+ consistently paid him above this minimum amount. (*See* Doc. 18-5).

What is more, not all variations in an exempt employee's weekly salary constitute a FLSA violation; "the regulation," for example, "permits deductions for voluntary days off." *In re Wal-Mart Stores, Inc.*, 395 F.3d 1177, 1181 (10th Cir. 2005). Subsection (b) allows "[d]eductions from pay . . . where an exempt employee is absent from work one or more full days for personal reasons, other than sickness or disability." 29 C.F.R. § 541.602(b)(1). On two occasions where defendants reduced Havens' weekly salary, the paystubs reflect that he took a "personal" day, making those deductions FLSA compliant. (*See* Doc. 18-5, ID 310, 312).

Likewise, "[a]n FLSA exemption for a salaried employee is not lost if the exempt employee, who is guaranteed a predetermined weekly pay of at least $455, also receives compensation based on hours worked beyond the normal workweek, including compensation on a straight-time hourly basis." *Smith v. Pepper Source, Ltd.*, 2013 WL 2250305, *2 (W.D. Ark.). And according to Havens' paystubs, defendants did, at times, pay him additional compensation for performing additional work or extra tasks, such as snow removal during winter months. (*See* Doc. 18-5, ID 306, 311-12 including extra compensation for "snow"). "[C]ontrary to the common understanding," the FLSA "permits payments in addition to salary . . . for time worked beyond base hours" without jeopardizing the employee's exempt status. *In re Wal-Mart Stores*, 395 F.3d at 1181.

Because neither the employee handbook, nor Havens' paystubs establish a "colorable basis" to believe that plaintiffs "and other employees were similarly situated and suffered from a common policy that violated the FLSA," *Marek v. Toledo Tool & Die Co., Inc.*, 2017 WL

7

5891765, *3–4 (N.D. Ohio) (citations omitted), I disregard this evidence in determining whether to grant plaintiffs' motion for conditional certification.

### B. Employee Declarations

As for the employee declarations, defendants urge me to disregard this evidence as well, because they include only "vague and generalized references" regarding the pay policies defendants applied to other A+ employees. (Doc. 20, ID 343-44).

Specifically, Perez, Foley and Havens each attest, in near-identical language, that: they "and others" regularly worked approximately forty-five hours per week; they "and others" did not receive uninterrupted meal periods; defendants had a "common company-wide policy of classifying . . . similarly situated employees as 'Exempt/Salaried,'" while also "reduc[ing] [their] weekly wages based on the number of hours . . . worked in a work week'"; and defendants "did not pay . . . others similarly situated overtime compensation . . . for hours worked in excess of forty . . . in a workweek." (*See* Docs. 18-1, 18-2, 18-3).

Carpenter and A+ "seem to suggest that this uniformity undermines each affiant's credibility." *Watson v. Advanced Distribution Servs., LLC*, 298 F.R.D. 558, 564 (M.D. Tenn. 2014). "But the defendants' point cuts both ways: the fact that the affiants have had identical experiences . . . and have made identical observations about other [employees] strongly supports a finding that the [employees] are similarly situated to each other." *Id.* Given the minimal showing required at this stage, I see "no basis to conclude" that the declarations are "inherently unreliable because of their relative uniformity." *Id.* After all, there are only so many ways in which employees can describe being short-changed under the same alleged FLSA-violating policy. That Perez, Foley and Havens use the same language to make similar assertions in this case is no indicia of a lack of credibility.

Defendants' second complaint about the declarations is, however, more compelling. They note that Perez, Foley and Havens provide no factual basis for their belief that A+ and Carpenter have subjected other employees to similar FLSA violations. For example, "[n]one of the plaintiffs averred that they had actually spoken to any others about hours worked or compensation," and "none . . . attested to personally observing other . . . similarly situated employees working more than forty hours per week." (Doc. 20, ID 350).

This failing is harder to overlook.

I have previously warned that a "plaintiff 'seeking certification based solely on his own declarations' faces an uphill climb," because a "single employee's experience may not be representative of every employee's experience." *Marek*, *supra*, 2017 WL 5891765 at *3 (citation and brackets omitted). But "a lone employee . . . *can* speak to an employer's company-wide policy if he has personal knowledge of other employees' circumstances," and "articulat[es] a 'factual basis' for this knowledge, one 'from which the Court can conclude the Plaintiff and other employees were similarly situated and suffered from a common policy that violated the FLSA.'" *Id.* *4 (citation and footnote omitted).

Perez, Foley and Havens arguably have not done that, as their declarations do not detail "facts sufficient to support an inference that [they] ha[ve] actual knowledge about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours." *Combs v. Twins Group, Inc.*, 2016 WL 7230854, * 3 (S.D. Ohio) (quoting *O'Neal v. Emery Fed. Credit Union*, 2013 WL 4013167, * 8 (S.D. Ohio)).

Nevertheless, even if I agreed that these prospective class members fall short in demonstrating personal knowledge of their coworkers' wages and hours, Perez and Foley are not relying on a "single employee's experience" to prove that other A+ employees have been subject

9

to similar FLSA violations. *C.f. Marek*, *supra*, 2017 WL 5891765 at *3. They are relying on the experiences of three different employees: Perez, Foley, and Havens. Each indisputably has personal knowledge of his own wages and hours, even if he cannot speak for others.

Thus, "[w]hile Defendant[s] spend much of [their] time arguing that the statements from [the putative class members] do not establish violations for *other* [employees], their testimony as to their own experiences would likely be sufficient to grant conditional certification and send notice to members of th[e] . . . class who were subject to the same . . . unwritten policies." *Hamm v. Ohio Southern Med. Ctr.*, 275 F. Supp.3d 863, 875 n.6 (S.D. Ohio 2017) (noting affidavits of two employees likely suffice for conditional certification); *see also Sisson v. OhioHealth Corp.*, 2013 WL 6049028, *7 (S.D. Ohio) (granting conditional certification where the named plaintiff submitted a declaration from one other employee to support the claims in her complaint).[5]

I therefore consider Perez, Foley and Havens' declarations in applying *O'Brien*.

### C. The *O'Brien* Factors

First among the *O'Brien* factors is "the factual and employment settings of the individual plaintiffs." *Monroe*, 860 F.3d at 397 (citation and brackets omitted). With regard to this factor, I consider "to the extent relevant to the case," the proposed plaintiffs' "job duties, geographic locations, employer supervision, and compensation." *Id.* at 402 (citation omitted).

According to their affidavits, during their time with defendants, Perez and Foley held the same job title, "general laborer/service technician," and performed the same job duties, "responding to service calls . . . performing miscellaneous general labor for residential and

---

[5] I am, though, somewhat puzzled by the failure to include reference to other coworkers' experiences. Averments from one or more of the named plaintiffs that they had spoken with X-number of coworkers, who relate the same, or substantially the same violation, would have added heft and bulk to their contentions. It also would have saved the parties (and me) the additional work dealing with defendants' "too little, too few" argument.

commercial buildings, including but not limited to, installing appliances, plumbing, and electrical maintenance." (Docs. 18-1, 18-2). Havens was an "office manager," but attests that his work also primarily involved "home and building repairs and maintenance, including . . . remodeling, electrical, plumbing, yard maintenance, snow removal, and other miscellaneous handyman tasks." (Doc. 18-3, ID 277-28).

Plaintiffs do not mention geographic location in their principal brief, but note on reply that "Defendants operated their business out of a single location"–albeit without citation to evidence on that point. (Doc. 21, ID 364). My own review of the record reveals no information about A+'s location or work site(s), which may, or may not play a role in the inquiry. *See Munoz v. Big Valley, Inc.*, 915 F. Supp.2d 46, 49 (D. D.C. 2013) ("Two employees may be similarly situated for purposes of the FLSA despite different responsibilities and work sites, but the Court has no way to make that determination on the present record.").

What I do know, however, is that all three employees attest to having the same supervisor, defendant Carpenter, who they claim "had the authority and responsibility to control the activities, work schedules and employment conditions of [them]sel[ves] and other[]"A+ employees. (Doc. 18-2, ID 273). They also describe a similar pattern of FLSA violations, which Carpenter purportedly directed–improperly classifying them as exempt, denying them overtime, and requiring them to work through meal periods.[6]

---

[6] In their declarations, Perez, Foley and Havens also characterize Carpenter as the "joint employer" of the prospective class, along with A+ Building and Maintenance. (Docs. 18-1, 18-2, 18-3). That issue is not relevant to the present motion and I do not address it. Further, I express no opinion on whether defendants did, in fact, improperly classify plaintiffs as exempt from the FLSA's overtime requirements based on their job duties or other factors. Again, "[a]t this point, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Peer v. Grayco Mgmt., LLC*, 2017 WL 2403269, *3 (M.D. Tenn.) (citation omitted); *see also Dillon v. Jackson Home Care Servs.*, 2017 WL 3446293, *4 (W.D. Tenn.) ("The question of whether [plaintiffs] satisfy the factual and legal tests for the

At least at this preliminary stage then, this does not appear to be a case in which I risk conditionally certifying a class whose members may have been subject to different pay policies by virtue of working under different supervisors at different locations. *Cf. Peer*, 2017 WL 2403269, at *4 (denying individual plaintiff certification for employees at multiple restaurant locations "without any hint that these locations, too, engaged in the same sort of FLSA violations"); *see also Cason v. Vibra Healthcare*, 2011 WL 1659381, *3 (E.D. Mich.) ("Plaintiff's own experience at Vibra Michigan does not justify the conditional certification of a collective action against several Vibra facilities nationwide.").

Considering the overlap in "job duties . . . employer supervision, and compensation," *Monroe*, 860 F.3d at 402 (citation omitted), plaintiffs' failure to identify particular worksite(s) is not a fatal defect.[7]

As to the second *O'Brien* factor, "the different defenses to which the plaintiffs may be subject on an individual basis," *id.* at 398, defendants offer only one example of an individualized defense: they note that Havens was not always a service technician. In June 2014, defendants promoted him to "front office manager/supervisor." (Doc. 20, ID 344). As a result, they explain Havens "no longer performed the duties of service technician and was not similarly situated to" Perez, Foley, or the other service technicians who may join the proposed class. (*Id.*).

Havens disputes defendants' claim. He contends the office manager "label[]" was "merely a title," and attests that he "still primarily performed general labor similar to the primary job duties associated with a maintenance technician" after his promotion. (Doc. 18-3, ID 277).

---

learned professional exemption is a matter more properly considered on a Rule 56 motion . . . with a fully developed record. Therefore, the Court declines to reach this argument in the context of a motion for conditional certification.").

[7] Plaintiffs could have corrected this omission by submitting a supplemental affidavit along with their reply brief.

For purposes of this motion, I side with Havens. "Balancing Defendant[s'] evidence against plaintiff's assertion . . . would require credibility and factual determinations improper at the conditional certification stage." *Hamm, supra*, 275 F. Supp.3d at 876. Giving credit to Havens' declaration, I agree the "common issues or job traits" he and other potential class members share "permit collective action" notwithstanding the possibility that defendants may have to present individualized defenses. *Marek*, *supra*, 2017 WL 5891765 at *4 (quoting *Monroe*, 860 F.3d at 404).[8]

That leaves the third factor: "the degree of fairness and procedural impact of certifying the [case] as a collective action." *Monroe*, 860 F.3d at 397. Perez and Foley estimate that the proposed class will include "approximately 35 to 50 similarly situated individuals" with potential overtime claims against defendants. (Doc. 18-1, ID 268). Defendants place the number lower, estimating a class of 12 to 36 current or former employees. (Doc. 20-1, ID 357).

Still, even if defendants are correct, certification of a small putative class "satisfies the policy behind FLSA collective actions and Congress's remedial intent by consolidating many small, related claims of employees for which proceeding individually would be too costly to be

---

[8] Defendants express no concern over the fact that the proposed class includes employees who may have suffered different types of FLSA violations. One A+ employee may have had his weekly wages improperly reduced, whereas another may have been compensated for all the hours he worked, but not compensated at the proper overtime rate. But if both employees performed "general labor" and worked more than forty hours a week during at least one workweek over the past three years, both would belong to the conditionally certified class. While "neither the statutory language nor the purposes of the FLSA collective actions require a violating policy to be implemented by a singular method," *Monroe*, 860 F.3d at 403, I note that depending on the facts disclosed in discovery, these differences may eventually warrant a division of the putative class into subclasses for convenience at trial. *See id.* at 418 (Sutton, J., concurring in part, dissenting in part) (Differing FLSA theories "does not mean that a collective action was not an option in our case. It means only that plaintiffs should have accounted for their distinct theories by dividing themselves into sub-classes, one corresponding to each theory of liability under the statute.").

practical." *Id.* at 397 (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). "While Congress could have imported the more stringent criteria for class certification under [Rule] 23" into the FLSA, including the numerosity requirement, *see* Fed. R. Civ. P. 23(a)(1), it chose not to do so. *O'Brien, supra*, 575 F.3d at 584. Nor will I do so in ruling on a motion for conditional certification.

### D. Objections to Disclosure of Putative Class Members

Lastly, defendants mount a vague objection to "the overreaching breadth of the information sought by Plaintiffs regarding the potential class members." (Doc. 20, ID 353). Carpenter and A + insist "[a]ll that is necessary for purposes of the issuance of such notice is the necessary contact information, including the names of the class employees and former employees, their last known address[es], email address[es], and, possibly, dates of employment." (*Id.*).

Yet this, however, is all plaintiffs request: a list of all potential class members "including their names, positions of employment, last-known mailing addresses, last-known telephone numbers, email addresses, work locations, and dates of employment." (Doc. 18, ID 259). Insofar as defendants object to disclosing "positions of employment" or "work locations," they do not explain how such disclosures would impose an unreasonable burden.

Defendants also "object to the overreaching breadth of the content of the Plaintiffs' proposed notice," but do not explain what in the notice they find objectionable. (Doc. 20, ID 353).

That said, I agree that I "must be scrupulous to respect judicial neutrality" when "exercising the discretionary authority to oversee the notice-giving process." *Hoffmann-La Roche, supra*, 493 U.S. at 174. "Consequently," I "will order the parties to meet and confer

regarding the contents and language of the notice, as well as how the notice will be distributed." *Rocha v. Gateway Funding Diversified Mortgage Servs., LP*, 2016 WL 3077936, *12 (E.D. Pa.).

Further, I will modify the class conditionally certified based on the nature of the work Perez, Foley and Havens have in common (instead of relying exclusively on the ambiguous phrase, "employees . . . who performed general labor") and, as noted above, limit it to those who "worked over 40 hours in any workweek, beginning three years immediately preceding the filing of th[e] Complaint" in the present action. (Doc. 18, ID 237).

**Conclusion**

It is, therefore,

ORDERED THAT:

1. Plaintiffs' motion for conditional class certification pursuant to 29 U.S.C. § 216(b) (Doc. 18) be, and hereby is, granted as modified herein;

2. The following class be, and hereby is, conditionally certified:

   Any current and former service technicians, general laborers, or other employees of Defendants who responded to service calls, and performed miscellaneous general labor for residential and commercial buildings including installing appliances, plumbing, remodeling, performing landscaping work and electrical maintenance, and worked over forty hours in any workweek from June 15, 2014 through the present.

3. The parties shall meet and confer, through counsel, regarding the content and form of notice this court is to give to proposed class members and to submit, within twenty-one days of the date of this Order, a joint proposed notice with a specific opt-in period not to exceed ninety days; and

4. Defendants shall produce to plaintiff within fourteen days of the date of this Order a list of all individuals who fall within the conditionally certified class described above, containing the following information:

    a. The current or former employee's full name;

    b. The current or former employee's last known home address, email address, and telephone number; and

    c. The current or former employee's dates of employment and position.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge